IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 20-cv-03004-NYW

ANTHONY MIRANDA,

    Plaintiff,

v.

THOMAS LITTLE, WARDEN, C.S.P.,
JASON LENGERICH, WARDEN, B.V.C.F., and
JEFFREY LONG, WARDEN, S.C.F.,

    Defendants.

## MEMORANDUM OPINION AND ORDER

Magistrate Judge Nina Y. Wang

This matter comes before the court on Defendants Thomas Little, Jason Lengerich, and Jefferey Long's (collectively, "Defendants") Motion to Dismiss Plaintiff's Second Amended Complaint ("Motion to Dismiss" or the "Motion") [Doc. 37, filed June 29, 2021]. The court considers the Motion to Dismiss pursuant to 28 U.S.C. § 636(c) and the Order of Reference dated June 15, 2021, [Doc. 31]. *See also* [Doc. 23; Doc. 28]. For the reasons explained herein, the Motion to Dismiss is **GRANTED**.

### RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Anthony Miranda ("Plaintiff" or "Mr. Miranda") is a prisoner in the custody of the Colorado Department of Corrections ("CDOC") and presently incarcerated at the Colorado State Penitentiary ("CSP") in Canon City, Colorado. [Doc. 1; Doc. 34]. He brings this action against Defendants Thomas Little, Jason Lengerich, and Jeff Long (collectively, "Defendants") in their official capacities as wardens of CSP, Buena Vista Correctional Facility ("BVCF"), and Sterling Correctional Facility ("SCF"), respectively, for their alleged violations of his

constitutional rights while in CDOC custody.  *See generally* [Doc. 18].  Specifically, Plaintiff alleges that he is subject to "unconstitutional segregation," whereby he is

> unnecessarily confined to his cell and forced to be in cuffs and shackles in every element of transport.  Even to and from showers and recreation.  Meals are served in cell.  We are not allowed visits or participation in facility programs such as food order or pictures.  Our property is deemed contraband and forced to be sent home.  We are bound to tables and subject to attacks from inmates who escape their cuffs to commit assaults.  We cannot participate in treatment or therapeutic communities or apply for community placement.  This increases duration of confinement.

[*Id.* at 4].  Believing Defendants violated his constitutional rights, Plaintiff initiated this action *pro se* on October 5, 2020 by filing his Prisoner Complaint.  *See generally* [Doc. 1].  On April 8, 2021, Plaintiff filed a Second Amended Complaint, which remains the operative pleading in this case. [Doc. 18].  Therein, Mr. Miranda asserts a single claim under 42 U.S.C. § 1983.  [*Id.*].

The Honorable Gordon P. Gallagher issued an Order Drawing Case on April 15, 2021, and this action was assigned to the undersigned. [Doc. 19].  Upon the unanimous consent of the Parties, this action was referred to the undersigned for all purposes pursuant to 28 U.S.C. § 636(c).  [Doc. 23; Doc. 28; Doc. 31].

On June 29, 2021, Defendants filed the Motion to Dismiss, seeking to dismiss the operative Second Amended Complaint for failure to state a claim.  [Doc. 37].  On July 15, 2021, Mr. Miranda filed an Opposition to Defendant's Motion to Dismiss ("Response") [Doc. 42], and a Motion to Appoint Counsel [Doc. 41].  On July 21, the court denied Plaintiff's Motion to Appoint Counsel. *See* [Doc. 43].  Defendants did not file a Reply in support of the Motion to Dismiss and the time to do so has elapsed.  Defendants' Motion to Dismiss is thus ripe for determination.

## LEGAL STANDARDS

Under Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  In deciding a motion under Rule 12(b)(6), the court must "accept as true all well-pleaded factual allegations … and view these allegations in

2

the light most favorable to the plaintiff." *Casanova v. Ulibarri*, 595 F.3d 1120, 1124 (10th Cir. 2010) (quoting *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009)). A plaintiff may not rely on mere labels or conclusions, "and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Rather, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Robbins v. Okla.*, 519 F.3d 1242, 1247 (10th Cir. 2008) (explaining that plausibility refers "to the scope of the allegations in a complaint," and that the allegations must be sufficient to nudge a plaintiff's claim(s) "across the line from conceivable to plausible."). The court must ultimately "determine whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed." *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007).

In applying this legal principle, this court is mindful that Mr. Miranda proceeds pro se and is entitled to a liberal construction of his papers. *Smith v. Allbaugh*, 921 F.3d 1261, 1268 (10th Cir. 2019). But the court cannot and does not act as an advocate for a pro se party. *United States v. Griffith*, 928 F.3d 855, 864 n.1 (10th Cir. 2019). Nor does a party's pro se status exempt him from complying with the procedural rules that govern all civil actions filed in this District, namely, the Federal Rules of Civil Procedure and the Local Rules of Practice for the District of Colorado. *See Requena v. Roberts*, 893 F.3d 1195, 1205 (10th Cir. 2018); *Murray v. City of Tahlequah*, 312 F.3d 1196, 1199 n.2 (10th Cir. 2008).

## ANALYSIS

Defendants move to dismiss the Second Amended Complaint on three grounds. First, they argue that Plaintiff fails to state a procedural due process claim because "Plaintiff cannot show

3

Defendants violated any clearly established constitutional right." [Doc. 37 at 3]. Second, Defendants indicate that Plaintiff cannot state an equal protection claim, arguing that Plaintiff fails to allege differential treatment between himself and other similarly situated inmates. [*Id*. at 4]. Third, Defendants argue that Plaintiff fails to state a valid substantive due process claim. [*Id*. at 5]. I first consider Defendants' due process arguments together, and then I consider Defendants' equal protection argument.[1]

### I. Fourteenth Amendment Due Process

The Fourteenth Amendment prohibits any State from depriving a person of life, liberty, or property without due process of law. U.S. Const. amend. XIV, § 1. Due process claims under the Fourteenth Amendment can take the form of a procedural or substantive violation: "procedural due process ensures the state will not deprive a party of property without engaging in fair procedures to reach a decision, while substantive due process ensures the state will not deprive a party of property for an arbitrary reason." *Hyde Park Co. v. Santa Fe City Council*, 226 F.3d 1207, 1210 (10th Cir. 2000). Substantive due process protection is accorded primarily to fundamental interests "relating to marriage, family, procreation, and the right to bodily integrity." *Williams v. Berney*, 519 F.3d 1216 (10th Cir. 2008) (quoting *Albright v. Oliver*, 510 U.S. 266, 272 (1994)).

#### A. Procedural Due Process

A plaintiff must make two showings in order to proceed on a procedural due process claim. *See Bartell v. Aurora Public Schools,* 263 F.3d 1143, 1149 (10th Cir. 2001). First, he must show that he possesses a protected liberty interest. *See id.*; *see also Veile v. Martinson,* 258 F.3d 1180,

---

[1] While Plaintiff does not identify in the Second Amended Complaint whether he is asserting a violation of procedural due process, substantive due process, or both, Defendants address each theory in the Motion to Dismiss. *See* [Doc. 37 at 3–4 (procedural due process); *id*. at 5 (substantive due process)]. Accordingly, given the dispositive nature of the instant Motion, the court finds it appropriate to do the same here.

4

1184–85 (10th Cir. 2001).  Second, he must show that the procedures used in addressing his liberty interest were inadequate under the circumstances.  *See Bartell,* 263 F.3d at 1149.

Accordingly, to evaluate whether Mr. Miranda has adequately pled his § 1983 claim to survive dismissal, the court must first examine whether Mr. Miranda has sufficiently alleged that he possesses a protected liberty interest.  "A liberty interest may arise from the Constitution itself, by reason of guarantees implicit in the word 'liberty,' … or it may arise from an expectation or interest created by state laws or policies."  *Al-Turki v. Tomsic*, 926 F.3d 610, 614 (10th Cir. 2019) (quoting *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005)).  "State policies or regulations will not create the basis for a liberty interest in the conditions of confinement so long as they do not 'impose[] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'"  *Est. of DiMarco v. Wyo. Dep't of Corr.*, 473 F.3d 1334, 1339 (10th Cir. 2007) (brackets in original) (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)); *see also Penrod v. Zavaras,* 94 F.3d 1399, 1406 (10th Cir. 1996) ("the transfer of an inmate to a less amenable and more restrictive quarters for non-punitive reasons is well within the terms of confinement ordinarily contemplated by a prison sentence" (internal quotation marks and citation omitted)).  "When determining whether a placement decision involves an atypical and significant hardship, factors which the Court might consider include: (1) whether the segregation … furthers a legitimate penological interest; (2) whether the conditions of the placement are extreme; (3) whether the placement increases the duration of confinement; and (4) whether the placement is indeterminate."  *Hill v. Myers*, No. 18-cv-00909-RM-KLM, 2020 WL 3036068, at *9 (D. Colo. June 5, 2020) (citing *Est. of DiMarco*, 473 F.3d at 1342).  This "assessment must be mindful of the primary management role of prison officials who should be free from second-guessing or micro-management from the federal courts."  *Est. of DiMarco*, 473 F.3d at 1342.

In the Motion to Dismiss, Defendants argue that Plaintiff fails to state a procedural due process claim because "Plaintiff cannot show Defendants violated any clearly established constitutional right." [Doc. 37 at 3]. Specifically, Defendants argue that "[a]lthough inmates have First Amendment rights to receive mail, "the peculiar and restrictive circumstances of penal confinement …. impose limitations on constitutional rights, including those derived from the First Amendment, which are implicit in incarceration.'" [*Id*. at 3–4 (citation omitted)]. Defendants also argue that "Plaintiff fails to allege facts regarding whether adequate state post-deprivation remedies are available" or "whether he engaged those post-deprivation processes." [*Id*. at 4]. Further, Defendants argue that "Plaintiff's allegations regarding cuffs, eating meals in his cell, and his programming being restricted fail to allege constitutional violations or any 'deprivations denying the minimal civilized measure of life's necessities.'" [*Id*. (citation omitted)]. To this point, Defendants contend "Plaintiff has failed to allege 'deprivations of essential food, medical care, or sanitation,'" or any "facts allowing an inference that conditions rose to the level of 'conditions posing substantial risk of serious harm.'" [*Id*. (citations omitted)].

In his Response, Plaintiff argues that he "has been in constant compliance with the institutional regulations of each defendant's facility and ergo was righteously entitled to all programatic [sic] privileges and restricted freedoms enjoyed by all prisoners similarly situated by him, constituting a protected liberty interest." [Doc. 42 at 1]. Plaintiff also contends that "[d]espite meeting behavioral expectations Plaintiff has been regressed to a severely disproportionate 'High Risk' classification status." [*Id*.]. Plaintiff claims this classification status expands the time he is confined to his cell and the restraints placed on him during transportation, and limits his communications with others, among other restrictions; whereas "Plaintiff's previous classification status allowed him" greater freedoms. [*Id*. at 1–2].

As mentioned above, Plaintiff alleges in the Complaint that he is subject to "unconstitutional segregation," whereby he is

> unnecessarily confined to his cell and forced to be in cuffs and shackles in every element of transport. Even to and from showers and recreation. Meals are served in cell. We are not allowed visits or participation in facility programs such as food order or pictures. Our property is deemed contraband and forced to be sent home. We are bound to tables and subject to attacks from inmates who escape their cuffs to commit assaults. We cannot participate in treatment or therapeutic communities or apply for community placement. This increases duration of confinement.

[Doc. 18 at 4]. In his Response to the Motion to Dismiss, Mr. Miranda appears to attribute these various limitations to his classification as "High Risk." *See* [Doc. 42]. Taking the allegations set forth in Mr. Miranda's Second Amended Complaint and Response to the Motion to Dismiss liberally, this court construes Plaintiff as challenging the constitutionality of his classification as well as the limitations that result in such classification.[2]

I find these allegations fail to establish atypical and significant hardship for purposes of a procedural due process claim. *See Muhammad v. Hood*, 100 F. App'x 782, 783 (10th Cir. 2004) (finding no atypical and significant hardship where the plaintiff was not placed in special confinement but merely moved to a more restrictive prison); *Silverstein v. Fed. Bureau of Prisons*, 704 F. Supp. 2d 1077, 1096 (D. Colo. 2010) (dismissing the plaintiff's procedural due process claim, because "Mr. Silverstein's transfer to an administrative segregation facility did not represent a substantial alteration of the conditions of his confinement").

---

[2] While the court generally does not consider additional facts asserted in a response to a motion to dismiss, rather than in a pleading, in determining whether a plaintiff has sufficiently pled a claim, *see In re Qwest Communications Int'l., Inc.,* 396 F. Supp. 2d 1178, 1203 (D. Colo. 2004) (explaining that the sufficiency of the plaintiff's allegations is based on those in the complaint, as "[t]he plaintiff[ ] may not effectively amend his Complaint by alleging new facts in his response to a motion to dismiss"), this court considers these additional arguments as clarifying, rather than supplementing or amending, the factual averments and cause of action of the Second Amended Complaint.

As an initial matter, Mr. Miranda points to no legal authority, and this court could not independently find any, to suggest that Colorado inmates have a state or federally created liberty interest to any particular classification, even where one classification is less desirable or more restrictive than others. *See Schell v. Evans*, 550 Fed. App'x. 553, 557 (10th Cir. 2013) (holding that an Oklahoma state inmate "has no protected liberty interest" in "any … discretionary housing classifications by prison officials"); *Respass v. Murphy*, No. 3:10CV00318 DJS, 2014 WL 4798537, at *2 (D. Conn. Sept. 26, 2014) (observing that federal prisoners have no constitutionally protected interest to a particular classification and Connecticut inmates have no state or federally created liberty interest in their classification). Thus, the court turns to whether the particular alleged conditions of confinement give rise to a liberty interest that could trigger a due process violation. Mr. Miranda's allegations that he is confined to his cell for longer periods, including for meals, and placed in "cuffs and shackles" during transportation, without more, does not establish that his current conditions of confinement cause atypical and significant hardship as compared to ordinary incidents of prison life. *See Al-Turki*, 926 F.3d at 616 (holding that the plaintiff failed to plead a due process violation because he alleged only "'ordinary incidents'" of prison life). Mr. Miranda's other conclusory allegations—that he is "not allowed visits or participation in facility programs such as food order or pictures," that his "property is deemed contraband and forced to be sent home," or that he is denied participation in "treatment or therapeutic communities or apply for community placement," [Doc. 18 at 4]—also do not adequately plead atypical and significant hardship. The foregoing allegations do not describe "deprivations denying the minimal civilized measure of life's necessities." *Craig v. Eberly,* 164 F.3d 490, 495 (10th Cir. 1998) (internal quotation marks omitted).

For instance, as to Mr. Miranda's allegations that his contraband property is "forced to be

8

sent home," he fails to state why his property was "deemed contraband" in the first place.[3] In any event, "prisoners do not have any reasonable expectation of privacy in their prison cells or in articles that they have in their possession while in prison." *Reneau v. Mahoney*, No. 13-cv-0125-WJM-KMT, 2014 WL 1224734, at *3 (D. Colo. Mar. 25, 2014) (citing *Hudson v. Palmer*, 468 U.S. 517, 525–28 (1984)). Further, as Defendants point out, "[t]he intentional deprivation of property is not a [F]ourteenth [A]mendment violation if adequate state post-deprivation remedies are available." *Durre v. Dempsey*, 869 F.2d 543, 547 (10th Cir. 1989) (citing *Hudson,* 468 U.S. at 533). Thus, "[i]n order to state a [due process] claim under § 1983 [for intentional deprivation of property], a complaint must allege facts sufficient to show deprivation, in this case the lack of an adequate state remedy." *Id*. at 548. Here, Mr. Miranda fails to allege facts that demonstrate he lacks an adequate post-deprivation remedy in state court with respect to his removed property. *See* [Doc. 18]. *See, e.g., Cooper v. Belcher*, 2010 WL 3359709, at *15 (D. Colo. Aug. 25, 2010) (noting that "[a]dequate state remedies are not limited to the filing of grievances, but include filing complaints in state court"). In particular, Colorado state law allows a prisoner to sue a prison official for intentional deprivations of property. *See Tena v. Linza*, No. 12-cv-03215-MSK-CBS, 2014 WL 1154183 (D. Colo. Mar. 13, 2014). Mr. Miranda does not address this remedy in his

---

[3] With respect to Plaintiff's allegations related to contraband, Defendants argue that "[a]lthough inmates have First Amendment rights to receive mail, "the peculiar and restrictive circumstances of penal confinement …. impose limitations on constitutional rights, including those derived from the First Amendment, which are implicit in incarceration."" [Doc. 37 at 3–4 (citation omitted)]. However, the operative Complaint does not mention Plaintiff's receipt of mail. *See* [Doc. 18]. Instead, Plaintiff states his "property is deemed contraband and forced to be sent home." [*Id*. at 4]; *see also Waller v. City and Cty. of Denver*, 932 F.3d 1277, 1286 n.1 (10th Cir. 2019) ("The nature of a Rule 12(b)(6) motion tests the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true, and we will not consider evidence or allegations outside the four corners of the complaint in reviewing the district court's Rule 12(b)(6) dismissal." (citations and quotations omitted)).

9

Second Amended Complaint or Response.

Additionally, with respect to Plaintiff's allegation that he has been denied "treatment or therapeutic communities" and cannot "apply for community placement," [Doc. 18 at 4], there is no indication of what treatment or therapy he required or what treatment was revoked, or any "community placement" to which he sought to apply. *Cf. Montgomery v. Crane*, No. 18-cv-02911-RM-NYW, 2020 WL 2857394, at *6 (D. Colo. May 7, 2020) ("Nor do Mr. Montgomery's conclusory allegations about a denial of medical care, or the revocation of his medical orders, or that SCF is not a medical facility or ADA compliant adequately plead atypical and significant hardship. There is no indication of what medical services he required, what medical orders were revoked, and in what ways SCF is noncompliant with the ADA."), *report and recommendation adopted*, 2020 WL 2848149 (D. Colo. June 2, 2020)).

Finally, the court is not persuaded by Plaintiff's argument that he has a "protected liberty interest" in "programatic [sic] privileges and restricted freedoms enjoyed by all prisoners similarly situated" to him. *See* [Doc. 42 at 1]. Plaintiff fails to specify the programs to which he is entitled[4]—the Complaint vaguely refers only to "facility programs such as food order or pictures." [Doc. 18 at 4]. In *Wilkinson v. Austin*, 545 U.S. 209, 223–24 (2005), the United States Supreme Court found atypical and significant hardship where the plaintiff was placed indefinitely in solitary confinement, which consisted of severely limited human contact, prohibitions on conversing cell-to-cell, constant lighting for 24 hours, one hour of exercise in a small room, annual reviews on continued placement, and disqualification from parole even if otherwise eligible. But here, Mr. Miranda's allegations of more restrictive conditions do not amount to a protected liberty interest

---

[4] Notably, Plaintiff expressly alleges his access to such programs is a "privilege[]" and not a right. *See* [Doc. 42 at 1].

10

to state a procedural due process claim. *See Shields v. Cline*, 829 Fed. App'x. 321, 324 (10th Cir. 2020) ("Shields only alleges that administrative segregation is more restrictive and that he is not allowed contact visitation, three hot meals a day, or access to all of the resources in the law library. Although administrative segregation imposes an inherent hardship, the fact of isolating confinement is not in and of itself enough to create a liberty interest." (citations omitted)).

### B.   Substantive Due Process

The court also finds that Mr. Miranda fails to state a substantive due process claim. "[T]he ultimate standard for evaluating a substantive due process claim is whether the challenged government action 'shocks the conscience' of federal judges." *Ruiz v. McDonnell*, 299 F.3d 1173, 1183 (10th Cir. 2002) (citing *Uhlrig v. Harder,* 64 F.3d 567, 573 (10th Cir. 1995)). A "plaintiff must demonstrate a degree of outrageousness and a magnitude of potential or actual harm that is truly conscience shocking." *Uhlrig*, 64 F.3d at 574. In *Uhlrig*, the Tenth Circuit stated

> [t]he level of conduct required to satisfy this additional requirement cannot precisely be defined, but must necessarily evolve over time from judgments as to the constitutionality of specific government conduct. We do know, however, that the "shock the conscience" standard requires a high level of outrageousness, because the Supreme Court has specifically admonished that a substantive due process violation requires more than an ordinary tort and that merely allowing unreasonable risks to persist in the workplace is not necessarily conscience shocking.

*Id*. (citing *Collins v. City of Harker Heights, Tex.,* 503 U.S. 115, 128 (1992)).

Here, the court finds that Plaintiff's allegations in the Second Amended Complaint—that he is "confined to his cell and forced to be in cuffs and shackles in every element of transport[,] … not allowed visits or participation in facility programs[,] … [his] property is deemed contraband and forced to be sent home[,]" and he is "bound to tables and subject to attacks from inmates who escape their cuffs to commit assaults," [Doc. 18 at 4]—are not enough to state a substantive due process claim.  Indeed, as explained above, the Second Amended Complaint fails to describe

conditions of confinement that constitute atypical and significant hardships in relation to the ordinary incidents of prison life, let alone conditions that shock the court's conscience. *See Ruiz*, 299 F.3d at 1184 (stating that "ordinary negligence does not shock the conscience … and that even permitting unreasonable risks to continue is not necessarily conscience shocking").

Thus, this court respectfully concludes that dismissal of any Fourteenth Amendment due process claim is appropriate.

## II.     Fourteenth Amendment Equal Protection

"An equal protection violation occurs when the government treats someone differently than another who is similarly situated." *Penrod v. Zavaras*, 94 F.3d 1399, 1406 (10th Cir. 1996). The Equal Protection Clause does not guarantee nor suggest that the law may never draw distinctions between individuals, nor does it provide a safeguard against arbitrary or unlawful governmental action like the Due Process Clause; rather, it requires there be some rational reason for the distinction. *SECSYS, LLC v. Vigil*, 666 F.3d 678, 684 (10th Cir. 2012). "In order to sufficiently state an equal protection claim, a prisoner must show that (1) he is treated differently than a similarly situated inmate; (2) the different treatment burdens a fundamental right; and (3) the different treatment bears no rational relation to a legitimate penal interest." *Gibson v. Hall*, No. 10-cv-02929-BNB, 2010 WL 5387720, at *1 (D. Colo. Dec. 22, 2010) (citing *Murphy v. Missouri Dept. of Corrections*, 372 F.3d 979, 984 (8th Cir. 2004) (internal quotation marks and citation omitted)). Thus, to survive a motion to dismiss, a plaintiff must identify specific examples of similarly situated individuals and how they were treated differently—general allegations that others were treated differently will not suffice. *See Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1216–19 (10th Cir. 2011).

Defendants argue that "Plaintiff fails to allege that Defendants treated him differently than other similarly situated inmates and the distinction was not 'reasonably related to a legitimate penological purpose.'" [Doc. 37 at 4]. The court first notes that it is unclear that Mr. Miranda is attempting to assert an equal protection claim. *See* [Doc. 18]. Plaintiff's only allegation in the Second Amended Complaint that addresses the treatment of others as compared to Plaintiff to support an equal protection claim is that Defendants operate a policy that "caused constitutional harm by ignoring due process" and such "constitutional deprivation … occurs repeatedly against D.O.C. offenders." [*Id.* at 4]. In his Response, Plaintiff argues he was "housed in the custody of each defendant respectively and at all times was undeniably entitled to equal protection under the law, as far as reasonably applicable for incarcerated persons." [Doc. 42 at 1].

First, Mr. Miranda does not allege that he is part of a protected class that is treated less favorably nor does he allege any discriminatory intent on the part of Defendants. *See Collins,* 656 F.3d at 1215 (observing that equal protection jurisprudence traditionally concerns actions that disproportionately burden certain classes of individuals); *Watson v. City of Kansas City, Kansas,* 857 F.2d 690, 694 (10th Cir. 1996) ("A plaintiff in an equal protection action has the burden of demonstrating discriminatory intent") (citations omitted); *Villanueva v. Carere,* 85 F.3d, 481, 485 (10th Cir. 1996) (Although "[t]he discriminatory purpose need not be the only purpose, ... it must be a motivating factor in the decision").

Second, to the extent that Mr. Miranda attempts to assert a class-of-one equal protection claim, an essential element of such a claim is that the plaintiff "has been intentionally treated differently from others similarly situated." *Grubbs v. Bailes,* 445 F.3d 1275, 1282 (10th Cir. 2006). But Mr. Miranda fails to allege any examples where Defendants treated him differently than similarly situated individuals. Nor does he allege that prison officials targeted him with disparate

treatment. *See Payne v. Maye*, 525 F. App'x 854, 857 (10th Cir. 2013) (observing that an equal protection claim may be based on allegations based on membership in suspect class or based on "class-of-one" if individual targeted in "irrational [or] abusive" manner" (citation omitted)). Instead, he asserts the alleged mistreatment occurs "repeatedly against D.O.C. offenders." *See* [Doc. 18 at 4].

Third, to the extent that Mr. Miranda asserts that those individuals classified as "High Risk" are treated less favorably than other classification, such claim does not implicate either a fundamental right or a protected class. Thus, the court applies a rational basis test. *See Brown v. Zavaras*, 63 F.3d 967, 971 (10th Cir. 1995) ("When the plaintiff is not a member of a protected class and does not assert a fundamental right, we determine only whether government classifications have a rational basis."). There are insufficient allegations in the Second Amended Complaint to permit a factfinder to conclude that the additional restrictions associated with the "High Risk" classification are not reasonably related to a penological interest. *Gwinn v. Awmiller,* 354 F.3d 1211, 1228 (10th Cir. 2004) (finding that differing treatment of various inmates need only be reasonably related to a legitimate penological purpose when a fundamental right or protected class is not at issue).

For these reasons, I find that Plaintiff fails to state a cognizable Fourteenth Amendment equal protection claim and dismissal is proper.[5]

---

[5] To the extent Mr. Miranda attempts to assert an Eighth Amendment Cruel and Unusual Punishment claim, the court finds that he fails to do so. The Eighth Amendment's proscription on cruel and unusual punishment extends to the conditions under which an inmate is confined and requires prison officials to provide adequate medical care. *Contreras on behalf of A.L. v. Dona Ana Cty. Bd. of Cty. Commissioners*, 965 F.3d 1114, 1116–17 (10th Cir. 2020) (Tymkovich, J., concurring). For instance, "[d]eliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment." *Walker v. Mohiuddin*, 947 F.3d 1244, 1249 (10th Cir. 2020) (brackets omitted) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). To demonstrate deliberate indifference, Plaintiff must satisfy both an objective component and a subjective component. *Requena*, 893 F.3d at 1215. That is,

## CONCLUSION

For the foregoing reasons, **IT IS ORDERED THAT:**

(1) Defendants' Motion to Dismiss [Doc. 37] is **GRANTED**;

(2) Plaintiff's single claim under 42 U.S.C. § 1983 is **dismissed without prejudice**; and

(3) A copy of this Order, marked as legal mail, shall be sent to the following:

> Anthony Miranda
> #121576
> Colorado State Penitentiary (CSP)
> PO Box 777
> Canon City, CO 81215-0777
>
> Case Manager for Anthony Miranda
> #121576
> Colorado State Penitentiary (CSP)
> PO Box 777
> Canon City, CO 81215-0777

DATED: January 3, 2022

BY THE COURT:

Nina Y. Wang
United States Magistrate Judge

---

he must show that the CDOC Defendants were "subjectively aware" of an objectively serious medical need and "recklessly disregarded that risk." *Wilson*, 877 F.3d at 1209 (brackets and internal quotation marks omitted). In the Response, Mr. Miranda asserts that "convicted prisoners who sue after experiencing cruel and unusual punishment while in custody do so under the eighth amendment's cruel and unusual punishment clause." [Doc. 42 at 3]. However, not only does Mr. Miranda not expressly state that he is asserting an Eighth Amendment claim, but, relevant here, his Second Amended Complaint fails to make any mention of such a claim. *See* [Doc. 18]. In any event, Mr. Miranda may not amend his pleading by adding new factual allegations in his Response to the Motion to Dismiss. *See Abdulina v. Eberl's Temp. Services, Inc.*, 79 F. Supp. 3d 1201, 1206 (D. Colo. 2015). Moreover, while Mr. Miranda enjoys a liberal construction of his filings, he is still bound by the same procedural rules that govern all civil actions filed in this District, namely, the Federal Rules of Civil Procedure and the Local Rules of Practice for the District of Colorado. *See Requena*, 893 F.3d at 1205. This includes Rule 15(a) of the Federal Rules of Civil Procedure that governs motions to amend pleadings and this District's Local Rule of Civil Practice 7.1(d) that prohibits including a motion within a response.